```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY  FILED                │
│ DOC #: _____               │
│ DATE FILED:  9 | 28 | 11             │
└─────────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
MICHAEL L. PASTERNAK,          :

           Plaintiff,     :     **MEMORANDUM ORDER**

                 :     10 Civ. 5045 (LTS) (JLC)

     -against-        :

DOW KIM,                :

           Defendant.   :
-----------------------------------------------------------X

**JAMES L. COTT, United States Magistrate Judge.**

This is an action in which Plaintiff Michael L. Pasternak ("Pasternak"), a portfolio

manager, has alleged that Defendant Dow Kim ("Kim"), a hedge fund founder, defrauded

Pasternak by making false statements to him about Kim's investor commitments in order to

obtain Pasternak's agreement to join Kim in a new start-up hedge fund and to cause him to reject

a lucrative competing offer.  Before the Court are two discovery disputes, one pertaining to

contention interrogatories and the other related to requests for admission ("RFAs") that

Pasternak has served on Kim.  Pasternak seeks permission to move to compel answers to the

contention interrogatories and to strike Kim's general objections to them, while Kim seeks

permission to move for a protective order to quash the RFAs.  As the parties have submitted

lengthy letter-briefs with respect to both applications, there is no need for a pre-motion

conference.  For the reasons that follow, Pasternak's proposed motion to compel answers to the

contention interrogatories and to strike Kim's general objections is DENIED, and Kim's

proposed motion to quash the RFAs is also DENIED.

USDC SDNY
DATE SCANNED  9 | 28 | 11

## I.    CONTENTION INTERROGATORIES

### A.    Summary of the Interrogatories

By letter dated September 16, 2011, Pasternak requested permission to move to compel Kim to answer contention interrogatories he had served on August 12, 2011, and to seek costs, including attorney's fees, in connection with such a motion, pursuant to Rule 37(a)(5)(A) of the Federal Rules of Civil Procedure. Letter from Thomas A. Holman, Esq. to the Court dated September 16, 2011 ("Holman September 16 Letter"), at 1. Plaintiff served nine interrogatories, with multiple subparts to each one. The interrogatories can be grouped as follows: Interrogatory Numbers 1, 3, and 4 ("the first set of interrogatories") pertain to Kim's contentions regarding the existence of capital commitments from investors as of a July 2, 2007 meeting he had with Pasternak, id. at 3-6; and Interrogatory Numbers 2 and 5-9 ("the second set of interrogatories") seek the details of six affirmative defenses interposed by Kim in his Answer to the Amended Complaint. Id. at 7-10. In addition to establishing whether certain capital commitments were received, the first set of interrogatories seek (a) the dates when each commitment was made; (b) whether it was made in writing or orally; (c) the amount of each commitment; (d) the facts supporting the contentions; (e) the witnesses supporting the contentions; and (f) the documents supporting the contentions.[1]

As to the second set of interrogatories, they seek whether Kim contends he "complied with all applicable laws, regulations and standards" (No. 2); whether Pasternak's claims should be "denied or diminished as a result of a purported failure to mitigate damages" (No. 5), "due to

---

[1]    Interrogatory Number 4 also seeks the identity of the parties to the agreement specified therein and its terms; it does not contain a subpart inquiring whether the agreement was oral or in writing.

the equitable doctrine of estoppel" (No. 6), "due to the equitable doctrine of waiver" (No. 7), or

"on the basis that purportedly Plaintiff did not reasonably rely on the defendant's

representations" (No. 8); and whether Kim contends that he "should be given credit for all

collateral sources from which Plaintiff has or shall receive benefit" (No. 9). The second set of

interrogatories contains subparts seeking the facts, witnesses, and documents that support the

respective contentions.

      B.     <u>Defendant's Objections to the Interrogatories</u>

      By letter dated September 21, 2011, Kim argues that these contention interrogatories are

improper, claiming that they have not been served "for their intended purpose, but rather in an

effort to extend the discovery process and continue to elicit factual discovery from Kim that he

has already pursued." Letter from Leo V. Leyva, Esq. to the Court dated September 21, 2011

("Leyva September 21 Letter"), at 1. He also contends that these interrogatories are overbroad

and unduly burdensome, and "inappropriately seek detailed discovery that should have been

sought [during the course of] Kim's . . . deposition testimony." <u>Id.</u> In addition, Kim notes that

Pasternak's attempt to strike Kim's general objections to the contention interrogatories should be

rejected because the objections were proper and, more importantly, Kim responded to the

interrogatories, answering "Yes" to Numbers 1 through 4 and, as to the others, by "providing a

substantive and pointed objection, specifically, objecting that it is improper for a litigant to

provide an opinion as to the legal validity of an affirmative defense." Leyva September 21

Letter, at 3.

      C.     <u>Purpose of Contention Interrogatories</u>

      Rule 33(a) of the Federal Rules of Civil Procedure authorizes the use of interrogatories

seeking the responding party's contentions. "Contention interrogatories, which seek information

about the factual bases underlying the claims and contentions of an adverse party, are expressly authorized under Local Civil Rule 33.3 'if they are a more practical method of obtaining the information sought than a request for a production of documents.'" Tribune Co. v. Purcigliotti, No. 93 Civ. 7222 (LAP) (THK), 1997 WL 540810, at * 1 (S.D.N.Y. Sept. 3, 1997) (quoting Local Civil Rule 33.3(b)).  As Magistrate Judge Katz observed in Purcigliotti, "[a]lthough contention interrogatories should not 'simply [be] a vehicle for requiring an adversary to regurgitate all factual information obtained in discovery,' such interrogatories will not be stricken merely because, due to the complexity of a given litigation, responding to the interrogatories entails a 'certain amount of burdensome labor.'" Id. (citations omitted).

Contention interrogatories should be carefully drafted to obtain "contentions," rather than something more appropriately obtained through other discovery methods, such as depositions. See generally 2 Silberberg et al., Civil Practice in the Southern District of New York § 21:7 (2d ed. 2010).  Courts have stricken contention interrogatories which asked a party to describe "all facts" that supported various allegations of the complaint, finding that to elicit a detailed narrative is an improper use of contention interrogatories. See, e.g., Moses v. Halstead, 236 F.R.D. 667, 674 (D. Kan. 2006) (contention interrogatory overly broad and unduly burdensome to the extent it sought "all" facts that supported each defense); Rivers v. Safesite Nat. Bus. Records Mgmt. Corp., No. 94 Civ. 5323 (JSM) (MHD), 1995 WL 510034, at *1 (S.D.N.Y. Aug. 28, 1995) (interrogatories stricken because "they call for repeated detailed narratives of the events at issue," and demand a description of "all facts" that support all of the principal allegations).

Finally, the essential purpose of contention interrogatories, coming at the end of discovery, is to narrow the issues for trial. Erchonia Corp. v. Bissoon, No. 07 Civ. 8696 (DLC),

4

2011 WL 3904600, at *8 (S.D.N.Y. Aug. 26, 2011). "In this District, contention interrogatories, unlike other types of discovery, are not designed to reveal new information to the opposing side. Rather, they are 'designed to assist parties in narrowing and clarifying the disputed issues' in advance of summary judgment practice or trial." Id. (citations omitted).  In response to contention interrogatories, a party is not required to review documents that have already been produced nor will a party be required to identify witnesses and documents where that information will subsequently be supplied in a pretrial order. See Purcigliotti, 1997 WL 540810, at *2; Phillips v. City of New York, 230 F.R.D. 369, 370 (S.D.N.Y. 2005) ("no basis in law to support a determination that detailed disclosure of defendant's theory of their cross-claim" by way of contention interrogatories "is compelled by the Federal Rules or any applicable law") (citations omitted).

D.     Analysis of Pasternak's Contention Interrogatories

The contention interrogatories posed by Pasternak, which follow the completion of Kim's deposition and properly come at the close of discovery as required by Local Civil Rule 33.3(c), seek more than Kim's specific position on particular issues in the case.[2] They demand that Kim describe all the facts and produce all the documents that support his principal allegations in his defense of the lawsuit (as set forth in Interrogatory Nos. 1, 3, and 4), and his affirmative defenses (as set forth in Interrogatory Nos. 2 and 5-9).  This enterprise will not narrow the issues for trial.

---

[2]     While Pasternak served only nine interrogatories, each one included multiple subparts such that the total number of interrogatories is 46 by the Court's count. Rule 33(a) makes clear that parties are limited to 25 interrogatories, "including all discrete subparts." While there may be some question as to whether Pasternak has failed to comply with these requirements, Kim does not argue the point and the Court will not reach the issue. See Ritchie Risk-Linked Strategies Trading (Ireland) Ltd. v. Coventry First LLC, 273 F.R.D. 367, 369 (S.D.N.Y. 2010) (subparts acceptable if "factually interconnected and dependent upon the question posed by the basic interrogatory").

Although Pasternak claims that the first set of interrogatories requires "pinpointed factual information which has not been revealed . . . to date in the discovery process," Holman September 16 Letter, at 5, he fails to explain how these issues were not addressed during the discovery process, and in particular why they are not questions similar to those posed at Kim's deposition. Indeed, even a cursory review of the transcript of the first day of Kim's deposition reveals that Pasternak pursued the issues raised in the first set of interrogatories in some detail. See, e.g., Deposition of Dow Kim dated March 2, 2011 at 126:7-127:5 (discussing what Kim said to Pasternak at July 2, 2007 meeting); 194:8-196:8 (discussing whether Kim had "a deal with Merrill Lynch" on July 2, 2007); and 220:2-221:9 (discussing whether Kim had "a signed deal" with Credit Suisse).[3] Moreover, Kim has responded affirmatively to Interrogatory Nos. 1 through 4, and as such, these answers will be treated by the Court as "'judicial admissions' that generally estop the answering party from later seeking to assert positions omitted from, or otherwise at variance with, those responses." Wechsler v. Hunt Health Sys., Ltd., No. 94 Civ. 8294 (PKL), 1999 WL 672902, at *2 (S.D.N.Y. Aug. 27, 1999) (citation omitted).[4]

---

[3]     The parties did not provide the Kim deposition transcript as part of this application, but had previously submitted the first day's transcript to the Court when Pasternak sought (and was granted) a second day of Kim's deposition.

[4]     The Court thus disagrees with Pasternak's view, expressed in his "reply" letter submitted to the Court on September 27, 2011, that Kim's responses are "tantamount to no responses at all." Letter from Thomas A. Holman, Esq. to the Court dated September 27, 2011, at 1. It is worth noting, however, that the Advisory Notes to Rule 33 observe that "[t]he general rule governing the use of answers to interrogatories is that under ordinary circumstances they do not limit proof." Advisory Notes to 1970 Amendment to Fed. R. Civ. P. 33. Thus, even if a party obtains satisfactory answers to its interrogatories the answering party may still modify its answers during the further course of the litigation. See, e.g., United States ex rel. Tyson v. Amerigroup Ill., Inc., 230 F.R.D. 538, 541 (N.D. Ill. 2005); see generally 8B Wright, Miller, & Marcus, Federal Practice and Procedure, § 2181 at 105-06 (3d ed. 2010) (parties not irrevocably bound to answer given, especially in response to contention interrogatories).

The questions posed in the second set of interrogatories will not streamline the litigation in any fashion. Pasternak claims that these interrogatories "properly query defendant about his affirmative defenses by seeking 1) in effect, an acknowledgement that he continues to assert the contention or defense, and 2) an identification of the facts, witnesses, and documents that he contends support these affirmative defenses." Holman September 16 Letter, at 8. Given that the parties previously stipulated to the withdrawal of Kim's 2nd, 4th, 7th, 8th, 10th, and 11th affirmative defenses, see January 14, 2011 Stipulation (Doc. No. 25), it is hard to understand why Pasternak feels obligated to serve contention interrogatories to confirm that the other affirmative defenses are still in play. If Pasternak does not believe any (or all) of these affirmative defenses have merit, on the basis of the factual record developed during the course of the litigation, then he is free to move to strike a defense, assuming he seeks permission from the district judge to do so. To the extent Pasternak wishes to determine what documents and witnesses Kim plans to rely on at trial in support of these defenses, the pre-trial order would be the logical vehicle through which to obtain that information, rather than these contention interrogatories. Kim should not be "required to parse through documents that have already been produced to [Pasternak], which [Pasternak is] in a position to review [himself], in order to explain the obvious." Purcigliotti, 1997 WL 540810, at *2.

If there are issues down the road as to evidence which was sought but not produced, they will be addressed by Judge Swain as part of the parties' pre-trial submissions, including any motions in limine. Judge Swain's Pre-Trial Scheduling Order (Doc. No. 22) provides that the parties must submit a Joint Pre-Trial Statement, which shall include, inter alia, a witness list containing a brief summary of the testimony of each witness the party will call, and a final exhibit list containing all exhibits to be offered at trial. I thus conclude that the contention

Case 1:10-cv-05045-DC   Document 30   Filed 09/28/11   Page 8 of 11

interrogatories are not the proper means to ascertain which documents Kim intends to use, or

which witnesses he intends to call, to support his affirmative defenses at trial.

## II.    REQUESTS FOR ADMISSION

Kim seeks permission to move for a protective order to quash Pasternak's recently served

requests for admission, of which there are 230 in total. Letter from Leo V. Leyva, Esq. to the

Court dated September 1, 2011 ("Leyva September 1 Letter"), at 1. Kim alleges that the RFAs

violate Rule 26 of the Federal Rules of Civil Procedure because they are "oppressive and unduly

burdensome." Id. Kim objects to the requests that seek admission that certain documents are

authentic, even though he did not produce them, nor were they in his possession, custody, or

control. Kim complains that Pasternak had the opportunity during Kim's deposition to seek

authentication of these documents and chose not to do so. He contends that he should not be

forced to review the documents presented at his deposition, and admit their authenticity

"especially considering they were produced by third parties." Id. at 2. Kim also objects to many

of the requests because they are "an attempt . . . to continue Kim's deposition" beyond the time

allotted. Id.

Pasternak opposes the request for a protective order, arguing that Kim has made "[a]n

[i]nsufficiently [c]onclusory [c]laim of [b]urden," and setting forth the basis for both the number

and scope of his RFAs. Letter from Thomas A. Holman, Esq. to the Court dated September 6,

2011 ("Holman September 6 Letter"), at 1-2. In addition, Pasternak describes a proposal he

made to Kim, in which he suggested reducing the number of RFAs to 153 with a stipulation to

authenticate several dozen emails which Kim either sent or received.

As a threshold matter, the mere fact that Pasternak has served 230 RFAs does not, in

itself, establish an undue burden or serve as a basis for a protective order. There are any number

of cases in which courts have approved even greater numbers of RFAs.  See, e.g., Gen. Elec. Co.

v. Prince, No. 06 Civ. 0050 (SAS) (MHD), 2007 WL 86940, at *2 (S.D.N.Y. Jan. 10, 2007)

("large number of requests [for admission] is not in itself a basis for a protective order") (citing

cases).  Rule 36, unlike other rules, contains no limitations on the number of RFAs that may be

served.  While the RFAs are extensive and cover a significant range of issues presented in the

case, that is entirely appropriate, "since the purpose of Requests for Admissions is not

necessarily to obtain information but to narrow issues for trial."  Diederich v. Dep't of the Army,

132 F.R.D. 614, 616 (S.D.N.Y. 1990).  It is often typical that they set forth "in sometimes

excruciating detail, the facts, events or communications to which admission is sought."  Id. at

618.  Having reviewed the RFAs, the Court does not find them to be unduly burdensome.

 Moreover, Kim seems to misunderstand the purpose and use of RFAs.  Unlike

interrogatories, document requests, or depositions, RFAs are not a discovery device at all, "since

[they] presuppose[] that the party proceeding under [Rule 36] knows the facts or has the

document and merely wishes its opponent to concede their genuineness."  8B Wright, Miller, &

Marcus, Federal Practice and Procedure, § 2253 at 324; T. Rowe Price Small-Cap Fund, Inc. v.

Oppenheimer & Co., 174 F.R.D. 38, 42 (S.D.N.Y. 1997) ("Rule 36 is not a discovery device").

Contrary to Kim's assertions, they are not an extension of deposition practice.  Instead, Rule 36

reduces the costs of litigation "by eliminating the necessity of proving facts that are not in

substantial dispute, to narrow the scope of disputed issues, and to facilitate the presentation of

cases to the trier of fact."  Id.; see also Henry v. Champlain Enters., Inc., 212 F.R.D. 73, 77

(N.D.N.Y. 2003).  RFAs, while often underutilized even by experienced litigators, are extremely

useful tools, particularly at the conclusion of discovery, because "their sole purpose is to

streamline the presentation of evidence at trial."  T. Rowe Price Small-Cap Fund, Inc., 174

F.R.D. at 43.  Thus, Kim is wrong when he argues that the RFAs do not "serve any clarifying

purpose."  Leyva September 1 Letter, at 4.  To the contrary, Pasternak has served these RFAs in

order to streamline the litigation to the extent possible by obtaining admissions.

      In addition, Kim has not cited to any authority for the proposition that a party need not

respond to RFAs that certain documents are authentic because the party did not produce them.

That is not surprising.  RFAs are intended to narrow issues for trial, and if parties were

constrained to use RFAs to authenticate only documents that had been produced by an opponent,

the intent behind the Rule would be largely defeated.  Of course, in responding to the RFAs, Kim

may choose not to admit, but instead, in compliance with Rule 36(a)(4), "specifically deny" or

"state in detail why [he] cannot truthfully admit or deny," as long as he has a good faith basis for

doing so.[5]  But the authentication of "any described documents" is specifically contemplated by

Rule 36(a)(1)(B).  Pasternak had no obligation to take time during Kim's deposition to inquire

about the authenticity of the documents he has identified in his RFAs.

      Accordingly, Kim is directed to respond to the RFAs, or alternatively agree to

Pasternak's proposal that reduces the number of RFAs and provides for a stipulation with respect

to the authenticity of certain documents,[6] within 21 days of the date of this Memorandum Order.

---

[5]     The Court commends to the parties the decisions in Diederich, T. Rowe Price Small Cap Fund, Inc., and Henry, all cited in this Memorandum Order, as well as Wiwa v. Royal Dutch Petroleum Co., Nos. 96 Civ. 8386 (KMW) (HBP), 01 Civ. 1909 (KMW) (HBP), 2009 WL 1457142, at **4-7 (S.D.N.Y. May 26, 2009), for guidance on proper responses to RFAs, and hopes that a review of these cases will help to ensure that the parties will not return to Court to litigate the sufficiency of Kim's responses to the RFAs under Fed. R. Civ. P. 36 and 37(c)(2).

[6]     The Court directs the parties to conduct another meet and confer in light of this decision to discuss whether the proposed stipulation, or some variation thereof, would save both time and expense to the parties and also provide an efficient presentation to the Court of matters not in dispute in the litigation.  Indeed, some have said that the device provided for in Rule 36
(continued...)

### III.   **CONCLUSION**

For the foregoing reasons, Pasternak's application to compel further responses to the

contention interrogatories and to strike the general objections is DENIED.  Kim's application to

quash the RFAs is also DENIED, and Kim must provide responses to the RFAs within 21 days

of the date of this Memorandum Order.

**SO ORDERED.**

Dated: New York, New York
      September 28, 2011

 

 

JAMES L. COTT
United States Magistrate Judge

**Copies of this Memorandum Order have been sent to counsel by ECF.**

---

[6](...continued)
"might well have been named a 'request for stipulations' since the term 'admissions' suggests
that evidence is being sought by the device."  2 Silberberg et al., Civil Practice in the Southern
District of New York § 23.2, at 23-5 (2d ed. 2010).  A stipulation may well be able to resolve
many of the issues presented herein.